UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW MICHAEL GOMEZ,

       Petitioner,

vs.                             Case No. 3:17-cv-1172-BJD-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____

## **ORDER**

## I.  INTRODUCTION

Petitioner Andrew Michael Gomez filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Doc. 1).   He is proceeding on a Second Amended Petition (Petition) (Doc. 22).   He challenges his state court (Duval County) conviction for two counts of murder in the second degree.   Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 24).[1]   Petitioner filed a Reply (Doc. 29).   <u>See</u> Order

_____

[1] Respondents filed an Appendix (Doc. 24).   In this opinion, the Court references the page numbers assigned by the electronic filing system.

(Doc. 8). Petitioner calculates the Petition is timely. Petition at 15. Respondents do not counter this contention.

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation omitted). In this case, the pertinent facts are fully developed in this record or

the record otherwise precludes habeas relief;[2] therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III.   HABEAS REVIEW

In a federal habeas proceeding, a reviewing court asks whether the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).   The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court."   Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam).   See 28 U.S.C. § 2254; Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), petition for

---

2 The state court conducted a post-conviction evidentiary hearing and Petitioner was represented by counsel.   (Doc. 24-2 at 284-85).

cert. filed, (U.S. Nov. 6, 2020); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Using this framework:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

James v. Warden, Holman Corr. Facility, 957 F.3d 1184, 1190 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(d)(1)-(2)), cert. denied, No. 20-708, 2021 WL 769704 (U.S. Mar. 1, 2021).   This is a high hurdle, not easily surmounted:

> A decision is "contrary to" clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case involving materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it. Id. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v.

<u>Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d
836 (2007).

<u>James</u>, 957 F.3d at 1190-91.   Indeed, if the state court applied clearly
established federal law to reasonably determined facts when determining a
claim on its merits, "a federal habeas court may not disturb the state court's
decision unless its error lies 'beyond any possibility for fairminded
disagreement.'"  <u>Kayer</u>, 141 S. Ct. at 520 (quoting <u>Harrington v. Richter</u>, 562
U.S. 86, 103 (2011)).

A state court's finding of fact, whether a state trial court or appellate
court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).
"The state court's factual determinations are presumed correct, absent clear
and convincing evidence to the contrary."  <u>Sealey</u>, 954 F.3d at 1354 (quoting
28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies
only to findings of fact, not mixed determinations of law and fact.   <u>Brannan v.
GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam)
(recognizing the distinction between a pure question of fact from a mixed
question of law and fact), <u>cert. denied</u>, 573 U.S. 906 (2014).   Furthermore, the
second prong of § 2254(d), requires this Court to "accord the state trial court
[determination of the facts] substantial deference."  <u>Dallas v. Warden</u>, 964
F.3d 1285, 1302 (11th Cir. 2020) (quoting <u>Brumfield v. Cain</u>, 576 U.S. 305, 314

(2015)).   As such, a federal district court may not supersede a state trial court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, a "look through" presumption is applicable.   Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."   Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he was deprived of the effective assistance of counsel. Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard."   Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), petition for cert. filed, (U.S. Jan. 7, 2021). Petitioner must make the familiar two-pronged showing:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). Because the petitioner must make the required showing on both prongs of the <u>Strickland</u> test, a court may conduct its inquiry in any order and need not address both components of the test if the petitioner's showing falls short on either one. <u>Id</u>. at 697, 104 S. Ct. 2052. In particular, where it is easier to avoid assessing counsel's performance and resolve the petitioner's claim on the ground that he has not made a sufficient showing of prejudice, courts are encouraged to do so. <u>Id</u>.

<u>Lee v. GDCP Warden</u>, 987 F.3d 1007, 1018-19 (11th Cir. 2021).

The Eleventh Circuit warns:

because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so. <u>Harrington [v. Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted). Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020) <u>petition for cert. filed</u>, (U.S. Feb. 11, 2021).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). The ineffective assistance of counsel may require a plea be set aside on the

ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>Finch v. Vaughn</u>, 67 F.3d 909, 914 (1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Indeed, a defendant's solemn declarations in open court carry a strong presumption of verity. Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible in light of the record.

## V.   GROUNDS THREE AND FIVE

Petitioner, in his Reply, waives ground three "as it is insufficient to establish relief under 28 U.S.C. § 2254(d)." Reply at 29. He concedes that the state court correctly applied the two-pronged <u>Strickland</u> standard to this claim. <u>Id</u>. With regard to ground five, Petitioner admits he cannot meet the AEDPA standard as he can neither show the state court's decision was contrary to clearly established federal law nor can he demonstrate the state court decision amounted to an unreasonable application of clearly established

8

federal law.   Reply at 42-43.   As such, the Court will not address grounds three and five.[3]

## VI.   GROUND ONE

Ground One:   Trial counsel rendered ineffective assistance of counsel by misadvising Petitioner concerning his ability to pursue an insanity defense in violation of Petitioner's right to effective assistance of counsel as afforded by the Sixth and Fourteenth Amendment of the United States Constitution.

Petition at 5.

In his supporting facts, Petitioner explains that his counsel advised Petitioner that the insanity defense should be abandoned in pursuit of plea negotiations as the insanity defense was not strong or viable due to conflicting psychological experts' opinions on Petitioner's sanity.   Id.   He asserts, but for his counsel's mis-advice, Petitioner would not have entered a plea of guilty and would have chosen to exercise his right to a trial by jury.   Id.   He contends there existed competent, substantial evidence to support an insanity defense, including Petitioner's involuntary commitment contemporaneous to the instant offense which involved the administration of anti-psychotic

---

3  Petitioner asks this Court to conduct some sort of independent review of grounds three and five and to present the question raised in ground five to the Eleventh Circuit for its consideration even though Petitioner cannot meet the AEDPA requirements.   Reply at 29, 42.   As this Court's review is strictly limited pursuant to AEDPA, the Court declines Petitioner's requests.   Indeed, there is a clear, emphatic rule which this Court must follow; if the state court adjudicated a claim on its merits, Petitioner must satisfy his burden under § 2254(d)(1).   Since Plaintiff either waives the claim or admits he cannot meet his burden under § 2254, the Court will not address grounds three and five.

medication, and including Petitioner's bizarre behavior at the time of the offense, which followed a car accident.   Id.

The record demonstrates the following.   Initially, Petitioner was charged in an information with two counts of murder in the second degree. (Doc. 24-1 at 31).   Upon motion of defense counsel, the Court ordered Petitioner to be transported for a neuro-psychological evaluation by Dr. Harry Krop.   Id. at 35-36.   An indictment for murder in the first degree and murder in the second degree followed.   Id. at 37-38.   Petitioner filed a Notice of Intent to Rely on Insanity Defense, stating he would rely on the testimony of Dr. Krop to establish the defense of insanity.   Id. at 54.

The state filed a Motion for Psychiatric Examination, and the Court appointed Dr. William Meadows to examine Petitioner as to his sanity or insanity at the time of the alleged offense.   Id. at 55-56, 59, 61-63.   On May 26, 2011, Petitioner signed a "Plea of Guilty and Negotiated Sentence."   Id. at 64-67.   In pertinent part, it states that Petitioner is entering his pleas of guilty to the lesser-included offense of second degree murder as to count one and as to count two, second degree murder, as charged in the indictment, "for the reason that I believe it to be in my best interest."   Id. at 64.   Not only does it state that Petitioner has been fully advised of the nature of charges, the range of punishment, the possible defenses and mitigation, it states that Petitioner

was advised of the potential affirmative defense of insanity and the defense was discussed at length with counsel.  Id.  Importantly, the plea form reads: "[a]lthough I understand that this defense may be viable in my case, I also understand the difficulty of proving such a defense under the current state of the law in the State of Florida and that the State of Florida has filed and is pursuing First Degree murder charges as to Count One of the Indictment."  Id.

Thereafter, the form states Petitioner is waiving the potential affirmative defense of insanity.  Id.  The following assurance is contained in the plea form:  "I feel it is in my best interest and a compromise between these positions to waive my right to a trial on this issue" and enter the plea as stated. Id.  Petitioner explains, in making his decision, he did the following: "carefully reviewed, weighed and considered the current state of Florida law as it relates to the potential affirmative defense of Insanity," reviewed the discovery materials related to the potential insanity defense, and discussed what would have to be shown to establish the insanity defense before a jury. Id.  In the plea form, Petitioner confirms that he is not under the influence of any drugs, medication, substance, or condition which would interfere with his understanding and appreciation of his plea and the consequences of the plea. Id. at 66.

The transcript of the plea proceeding is telling.  Id. at 342-57.  At the inception of the proceeding, defense counsel, Ian Weldon, announced to the Court that the parties had reached a proposed disposition.  Id. at 344.  Mr. Weldon mentioned that although the defense had previously filed a motion to rely on the defense of insanity, as the state was seeking a first degree murder conviction, the defense decided to view the plea agreement "as a compromise between those positions."  Id.  As such, the defense was waiving the right to have a trial on the issue of insanity and would enter a plea to two counts of second degree murder.  Id.  Furthermore, the sentencing range would be forty years to life.  Id.  Mr. Weldon stated he had reviewed the plea form with his client and they both agreed with the plea.  Id. at 345.

In response, the prosecutor told the court that the experts, Dr. Krop and Dr. Meadows, disagreed on the matter of sanity at the time of the offense, providing their opinions.  Id. at 346-47.  After the state provided a factual basis for the plea, Mr. Weldon stated there was no objection or exception to the factual basis for purposes of the plea.  Id. at 345-47.  The court specifically inquired as to whether there was "no issue as to competency?"  Id. at 347.  Both the state and the defense responded in the negative.  Id.

The court inquired as to whether Petitioner wanted to enter the plea as stated by counsel.  Id. at 349.  Petitioner confirmed that he did want to enter

12

the plea.   Id.   The court asked if Petitioner had lengthy conversations with his attorney about the charges and the possible defenses, including insanity. Id. at 349-50.   Petitioner responded in the affirmative.   Id. at 350.   The court asked if Petitioner wished to waive the insanity defense, and Petitioner said yes.   Id.   Petitioner told the court he had no questions.   Id.

The court made an extensive inquiry as to the plea.   Id. at 350.   The court referenced the plea form and the fact it discussed "that defense of insanity."   Id. at 351.   Upon inquiry, Petitioner confirmed that his counsel had carefully gone through the form with Petitioner.   Id.   Petitioner said he could read and write, had no questions about the plea form, and his attorney had answered all of his questions.   Id.   Petitioner stated his satisfaction with his counsel's services.   Id. at 351-52.

When asked if Petitioner was pleading guilty because he was guilty, Petitioner responded, "[n]o ma'am, not that I feel that way."   Id. at 352.   Mr. Weldon explained the plea was a compromise between the position of first degree murder and the defense of insanity, with the defense obtaining a plea to second degree murder on the first count.   Id. at 353.   The court asked, "[i]n his best interest?"   Id.   Mr. Weldon responded yes.   Id.   The court then asked if Petitioner felt like the plea and negotiated sentence "are in your best interest[.]"   Id.   Petitioner said yes.   Id.   The Court found the plea freely

and voluntarily entered with a full understanding of the consequences of entering the pleas.   Id.

Petitioner exhausted this ground by presenting it in his Second Amended Motion for Post-Conviction Relief.   (Doc. 24-2 at 46-53).   The trial court entered an Order Denying Defendant's Second Amended and Third Amended Motions for Post-Conviction Relief.   Id. at 103-24.   Relying on the Strickland two-pronged standard and the holding in Hill (Doc. 24-2 at 105-107), the trial court denied post-conviction relief on this claim of ineffective assistance of counsel.   Id. at 110-12.   On August 1, 2017, the 1st DCA affirmed per curiam. (Doc. 24-3 at 163).   The mandate issued on October 5, 2017.   Id. at 165.

As the trial court properly applied the two-pronged Strickland standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected Petitioner's claim based on Strickland. The trial court, appropriately applying the Strickland standard of review, also found Petitioner failed to satisfy the performance prong of Strickland.   (Doc. 24-2 at 112).   The trial court concluded Petitioner failed to overcome the presumption of effective performance accorded to his counsel.   The court opined:

> [T]he evidence established by the record and evidentiary hearings demonstrate that Defendant was not misadvised regarding an insanity defense.

14

> Rather, based on the medical opinions of Dr. Meadows and Dr. Krop, a strategic decision was made to enter pleas of guilty to a lesser-included crime in Count I, and as charged in Count II. The evidence shows the decision was made in order to specifically avoid a jury trial on the two Counts as charged and where, as discussed *infra* in Ground Four, death could have been a possible sentence.

Id.

In coming to its decision, the court noted that Petitioner could not seek to go behind his previously sworn testimony given at the plea proceeding. Id. at 110-11. The court also relied on the testimony presented at the evidentiary hearing, finding no credible evidence that defense counsel misadvised Petitioner regarding his ability to pursue an insanity defense. Id. at 111.

The law in this Circuit provides, "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Hardwick v. Benton, 318 F. App'x 844, 846 n.2 (11th Cir. 2009) (per curiam) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir.2000)). The post-conviction state court evidentiary hearing demonstrates the following. Petitioner's counsel, Ian Weldon, testified he had previously been employed with the Public Defender's Office for a little over a decade and his practice deals with criminal law. (Doc. 24-2 at 190). He attested he was experienced in handling criminal cases with clients

with mental health issues and was familiar with the protocols, procedures, and rules dealing with competency evaluations.   <u>Id</u>. at 192.

Mr. Weldon testified that Dr. Krop found Petitioner competent and very intelligent.   <u>Id</u>. at 193-95.   Mr. Weldon was also aware that Dr. Krop believed there may be a viable insanity defense.   <u>Id</u>. at 195.   Mr. Weldon knew Dr. Meadows found Petitioner competent to proceed and concluded there was no viable insanity defense.   <u>Id</u>. at 196.   Mr. Weldon told the court plea discussions followed these evaluations.   <u>Id</u>.   Mr. Weldon said he was satisfied that Petitioner understood his plea as well as the plea form.   <u>Id</u>. at 199-200.

The court pointedly asked Mr. Weldon about the quality of the insanity defense and the content of Mr. Weldon's advice to his client.   <u>Id</u>. at 209.   Mr. Weldon responded:

> Well, we discussed it.   It is a difficult defense. It is up to the jurors as to, you know, whether they are going to accept that or not.
>
> And, you know, I think we looked at Dr. Meadows['] report versus Dr. Kropp's [sic] and decided whether we are going to be able to succeed on that. Ultimately.   We are not going to pursue it.   We took negotiations rather than risk guilty to first degree murder.

Id.  Mr. Weldon explained he believed Dr. Krop had some reservation about the insanity defense and Dr. Meadows' report said Petitioner was sane at the time of the offense, making it a difficult for a jury to reconcile the opposing positions, leading to plea negotiations.  Id. at 210.  Of import, Mr. Weldon testified the prosecutor threatened to file a death penalty notice and the defense successfully held off the notice by entering into plea negotiations.  Id. at 288-89.

On cross-examination, Mr. Weldon explained that he discussed the risks of going to trial versus the rewards of going to trial, and the defense decided to come up with the compromise with the state as to a lesser charge.  Id. at 295.  Mr. Weldon attested that he never told Petitioner "he was unable to pursue an insanity defense[.]"  Id. at 296.  Mr. Weldon admitted that Petitioner's desire to avoid the death penalty played "a big part of the plea negotiations, to hold off on the death penalty, and a lot of our calculus was based on that as well."[4] Id. at 300.

The trial court, in denying the Rule 3.850 motion, not only relied on the testimony from the evidentiary hearing, it also relied on Dr. Krop's testimony

---

[4] Notably, the state may seek the death penalty even if it does not file notice of intent to seek death within forty-five days of arraignment.  Gonzalez v. State, 829 So. 2d 277, 279 (Fla. 2d DCA 2002) ("failure of the State to give timely notice under the rule [Fla. R. Crim. P. 3.202] does not preclude the State from seeking the death penalty").

from the sentencing proceeding, noting that Dr. Krop testified he did not finalize his opinion as to sanity or insanity because Petitioner elected to enter into a negotiated plea.  Id. at 111.   Furthermore, the court relied on the rather strong testimony from Dr. Meadows opining that "Defendant was not insane and there was no viable insanity defense."  Id.

The Court finds the state court's determination is consistent with federal precedent.   The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In short, the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and Hill or based on an unreasonable determination of the facts. Therefore, the state court's decision is entitled to deference and ground one is due to be denied.

## VII.   GROUND TWO

GROUND TWO:  Trial counsel rendered ineffective assistance of counsel by misadvising Petitioner concerning his ability to move to suppress incriminating statements in violation of Petitioner's right to effective assistance of counsel as afforded by the Sixth and Fourteenth Amendments of the United States Constitution as well as Petitioner's Fifth Amendment right against self incrimination as afforded by the United States Constitution and as articulated by the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966).

Petition at 6.

In his supporting facts, Petitioner states counsel advised Petitioner to pursue plea negotiations and a plea agreement rather than moving to suppress Petitioner's incriminating statements given to law enforcement during an interview.  <u>Id</u>. at 6.  Petitioner complains this advice was given even though Petitioner was interviewed while he under involuntary commitment pursuant to the Baker Act as well as having been recently involuntarily administered two anti-psychotic medications (Haldol and Risperidone).  <u>Id</u>.  Petitioner asserts his rights may not have been properly waived, "as Petitioner was likely incapable of understanding his rights due to the influence of the psychotropic medication as well as his compromised psychological state[.]"  <u>Id</u>.

Petitioner exhausted this claim of ineffective assistance of counsel by presenting it in his Second Amended Motion for Post-Conviction Relief.  <u>Id</u>. at 53-57.  The court denied post-conviction relief.  <u>Id</u>. at 115-17.  The 1st DCA affirmed.  (Doc. 24-3 at 163).

The trial court opined Petitioner may not seek to go behind his previously sworn testimony given during his plea proceeding.  <u>Id</u>. at 115-16.  The trial court concluded it was the defense's strategic decision to refrain from filing a motion to suppress because the defense wanted to keep the state engaged in plea negotiations.  <u>Id</u>. at 116.  This was particularly of concern as the state

obtained an indictment for murder in the first degree, the prosecutor was threatening to seek the death penalty, and the state could have sought the death penalty as to the first count of the indictment. <u>Id</u>. The trial court noted, defense counsel attested Petitioner agreed that counsel should not file a motion to suppress under these circumstances. <u>Id</u>. Counsel explained that part of the reasoning behind not filing a motion to suppress was that, "aside from Defendant's confession, there existed a great amount of other evidence against Defendant and, as such, Defendant's confession was not dispositive of the case."[5] <u>Id</u>. at 116.

The trial court held:

> This Court finds Defendant has failed to fulfill his burdens of showing trial counsel either told Defendant, or wrongly believed, that Defendant's mental state and/or use of psychotropic medications would not be relevant regarding the voluntariness of Defendant's statements. Moreover, this Court finds it is not reasonably likely that, even if counsel had filed a motion to suppress, the motion would have changed the outcome of the instant case. Based on the testimony presented during the evidentiary hearings, this Court finds counsel made a well-reasoned strategic decision to refrain from filing a Motion to Suppress, including seeking to avoid subjecting his client to the death penalty. As such, this Court finds

---

[5] The police found Petitioner naked in the middle of a community swimming pool, with the body of a child (eighteen months old) floating in the pool and the body of the child's mother at the bottom of the pool. (Doc. 24-1 at 17). Autopsies confirmed both victims died from drowning. <u>Id</u>. The police photographed scratches, described as claw marks, on Petitioner's neck or clavicle. <u>Id</u>. at 165, 182.

> Defendant has failed to fulfill his burdens under
> Strickland of showing counsel rendered deficient
> performance.   As such, Ground Two is denied.

Id. at 116-17.

Upon review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on Strickland. Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts.   Indeed, the state court was objectively reasonable in its Strickland inquiry.   Failing to satisfy the performance prong of Strickland, Petitioner cannot prevail on his claim of ineffective assistance of counsel as a petitioner must satisfy both prongs of the two-part standard.   Applying the look-through presumption described in Wilson, deference is due to the 1st DCA's decision affirming the decision of the trial court in denying post-conviction relief.   As such, ground two is denied.

## VIII.   GROUND FOUR

GROUND FOUR:  The trial court's acceptance of Petitioner's plea of guilty without a judicial finding of a factual basis for the charges to which Petitioner pled amounted to a violation of Petitioner's right to due process as afforded by the Fifth and Fourteenth Amendment of the United States Constitution and was contrary to, or involved an unreasonable application of, clearly established federal law as articulated by the Supreme Court in Pate v. Robinson, 383 U.S. 375 (1966), North Carolina v. Alford, 400 U.S. 25 (1970), and Bousley v. United States, 523 U.S. 614 (1998).

Petition at 9.

21

In this fourth ground for relief, Petitioner asserts the trial court accepted the plea without making a judicial finding of a factual basis for the plea.  Id. at 9.  In support, Petitioner alleges he maintained his innocence at the plea proceeding.  Id.

The record shows the trial court entered into an extensive plea colloquy after Petitioner signed a plea agreement stating he was entering his pleas of guilty believing the pleas to be in his best interest.  During the plea proceeding, the court asked whether there was a factual basis for the pleas. Id. at 345.  The state responded, providing a detailed factual basis for the pleas:

> Yes, Your Honor, were this case to proceed to trial the State of Florida would establish beyond and to the exclusion of all reasonable doubt that on July 8th, 2009, this defendant, Mr. Gomez, did unlawfully take the human lives of two individuals, Tiffany Satone and daughter [child victim], [child victim] being a child under the age of 18 years of age.
>
> Your Honor, the facts in this case if it were to proceed to trial would be that this defendant on the date in question did effect the death of both these individuals by drowning.  Both of these victims were found deceased in a community pool up in the Arlington section of town.  The defendant was located in the same pool by Jacksonville Sheriff's officers who responded on the scene.  And the defendant was taken into custody.

It was determined throughout dependency of the investigation that the death was at the hands of this defendant.   He has been charged accordingly.

This is all contrary to provision of section 672.04(2) of the Florida Statutes.

I'd also put on the record that both the defendant had been interviewed by the Jacksonville Sheriff's Office detectives, he provided facts indicating he was in fact responsible.   He was the only person with the ability to be responsible for the deaths of these two individuals.   Their death was a result of drowning and Medical Examiner determined that as to both individuals.

An evaluation of this defendant had been undertaken by counsel for the defense and also for the State as to the issue of sanity at the time of the offense. Dr. Krop for the defense opined he believed the defendant may have a liable [sic] defense of insanity. Dr. Meadows examined the defendant for the State of Florida in a report that's been received, provided to defense counsel just as recently as last night, opined the defendant was in fact sane at the time of the offense.

Interview was conducted of the defendant. That was during the course of that evaluation which was not confidential, the nature of that interview comports with the facts and circumstances as determined by the Sheriff's Office during their investigation, that this defendant was in fact responsible and did cause the death of these two individuals by drowning.

Id. at 345-47.

23

Immediately thereafter, defense counsel stated, "for purposes of the plea[,] we have no objection or exception to the factual basis as stated by the State[,]" and the court said okay.   Id. at 347.   The court asked Petitioner if he wanted to enter his plea and proceed to sentencing.   Id. at 349.   Petitioner confirmed he wanted to do that.   Id.   Petitioner stated he was willing to waive his right to a jury trial.   Id. at 349-50.   Petitioner had no questions or reservations about his decision.   Id. at 350.   Petitioner said he thought the plea and negotiated sentence were in his best interest.   Id. at 353.

Petitioner raised the claim presented in ground four of the Petition in a state petition for writ of habeas corpus.   (Doc. 24-3 at 285-317).   The trial court entered an Order Dismissing Defendant's Petition for Writ of Habeas Corpus, construing the petition to be a motion for post-conviction relief pursuant to Rule 3.850.   (Doc. 24-4 at 147-51).   The court found the petition/motion untimely.   Id. at 148.   The court also found the petition/motion second or successive.   Id. at 149-50.

Alternatively, the court found Petitioner's allegations do not constitute manifest injustice.   Id. at 149.   In making this finding, the court noted that stipulating to a factual basis is appropriate as long as there is sufficient record evidence to support the stipulation, and the record is sufficient if arrest and police affidavits support the factual basis.   Id.   As such, the court found an

adequate factual basis to support the plea provided at the time of the plea and within the record.   Id.

Petitioner appealed the circuit court's decision.   (Doc. 24-5 at 39-40, 45-80).   On February 12, 2019, the 1st DCA affirmed per curiam.   Id. at 85-86. The mandate issued October 1, 2019.   Id. at 93.   Petitioner sought discretionary review, id. at 95-97, and the Supreme Court of Florida declined to accept jurisdiction on February 25, 2020.   Id. at 148.

To the extent the claim was addressed on its merits, the Court gives deference to the 1st DCA's decision affirming the decision of the trial court.[6] The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

The 1st DCA's decision affirming the trial court is not contrary to, nor an unreasonable application of controlling United States Supreme Court precedent.   As Petitioner has not demonstrated that the adjudication of the state court was contrary to or an unreasonable application of any clearly

---

[6] Respondents do not assert this ground is unexhausted and procedurally defaulted.   They contend the claim was exhausted when raised in the state habeas petition.   Response at 33.

established federal law as determined by the United States Supreme court or an unreasonable determination of the facts, Petitioner is not entitled to habeas relief on ground four.

Alternatively, this claim is due to be denied.   The trial court asked the state to present a factual basis for the plea, the state provided one, and the court said okay.   Defense counsel stipulated to the factual basis for the purposes of the plea.   Neither defense counsel nor Petitioner announced any legal exception or objection.   The court accepted the plea, finding it was freely, knowingly, and voluntarily entered.   (Doc. 24-1 at 353).   The plea proceeding and the record evidence demonstrate a factual basis for the plea.   See Response at 35.

At the plea proceeding, Petitioner expressed his position that he was pleading guilty because he believed it to be in his best interest.   This position is also contained in the written plea agreement signed by Petitioner. Petitioner is not entitled to habeas relief on ground four of the Petition.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Second Amended Petition (Doc. 22) is **DENIED**.

2.   This action is **DISMISSED WITH PREJUDICE**.

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Second Amended Petition (Doc. 22), **the Court denies a certificate of appealability**.[7]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of March, 2021.

BRIAN J. DAVIS
United States District Judge

sa 3/8
c:
Andrew Michael Gomez
Counsel of Record

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

27